## MURPHEY vs. BARRON.—June, 1827.

The action for money had and received, is an equitable action, and equally as remedial in its effects as a bill in equity.

If one man takes another's money to do a thing, and he refuses to do it, it is a fraud; and it is at the *election* of the party injured, either to affirm the agreement, by bringing an action for the nonpayment of it; or to disaffirm it *ab initio*, by reason of the fraud, and bring an action for money had and received to his use.

But where a vendor was exonerated from the delivery of a slave, then out of his possession, whom he had sold, and been paid for, and afterwards persuaded or enticed to abscond, so that the purchaser never got possession of him, no action can be maintained upon the contract of sale for a nondelivery, or to recover back the purchase money, as money had and received by him to the use of the vendee; either could have been maintained, if it had been the vendor's duty to deliver the slave; and he had refused. The proper remedy here is a special action on the case for persuading or enticing the slave to abscond.

APPEAL from *Harford* County Court. This was an action of *assumpsit*. The declaration contained *three* counts. The *first* count stated that the plaintiff, (now appellee,) being the owner of a negro man slave named *Isaac,* sold, conveyed and delivered, the said slave to the defendant, (the appellant,) to be holden in mortgage as a pledge and security for the payment of the sum of $404 61, due from the plaintiff to the defendant, and the defendant did then agree, assume and promise, that he would return and deliver the said negro to the plaintiff, on payment of the said sum of money; and although the money was afterwards paid by the plaintiff to the defendant in discharge of the pledge of the said slave, yet the defendant neglected and refused to deliver the said slave, &c. The *second* count was for money had and received. The *third* count stated that the defendant, being the owner and possessor of another slave called *Isaac*, did agree and contract with the plaintiff, that if he would pay to the defendant the sum of $404 61, as the purchase money and consideration therefor, the defendant would sell and deliver the said slave to him the plaintiff; and the plaintiff confiding, &c. paid the said sum of money to the defendant, which the defendant accepted as and for the price of the said slave; yet the defendant, not regarding his promise, &c. neglected and refused to deliver the said slave to the defendant, although, &c. The defendant pleaded *non assumpsit,* and issue was joined.

MURPHEY v. BARRON.—1827.

At the trial, the plaintiff produced one *Aquila Keen*,, one of the subscribing witnesses to the bill of sale first herein after set forth, who proved that he was requested, by the plaintiff and defendant, to witness the execution of the bill of sale; which he did; that when the plaintiff had signed the same, he requested the defendant to relate to the witness the understanding between them, respecting the negro *Isaac*, named in the bill of sale. In answer thereto, the defendant replied, that the understanding was that the plaintiff was to have the said negro again, provided he paid the defendant the money mentioned in the bill of sale, within four months, if he wanted the said negro for his own use. The same witness also gave evidence, that when the plaintiff and defendant came out of the house, shortly after executing the bill of sale, the plaintiff, seeing the said negro, observed to the defendant, that it was a lucky thing that *Isaac* was there, that he might take him, as he was his property, or words to that effect. The bill of sale, which was also read in evidence, was dated the 10th of April 1818, whereby, in consideration of the sum of $404 61, *Barron* bargained, sold and delivered to *Murphey*, his negro man *Isaac*. The negro therein mentioned was in pursuance thereof delivered to the defendant. The plaintiff also gave in evidence, that he did, on the 7th of July next, after the execution of the said bill of sale, call on the defendant and pay him the consideration money mentioned therein; and that the defendant did execute and deliver to the plaintiff a receipt for the money so paid; that at the time of the payment of the money, the plaintiff demanded of the defendant that he should deliver up the bill of sale; to which the defendant objected, but stated that he would agree to whatever a certain *Walter T. Hall*, a magistrate in the vicinity, should say he ought to do in this respect. That the plaintiff then brought a letter from *Walter T. Hall* to the defendant, in which he did advise the defendant to give up the bill of sale, which the defendant did accordingly deliver up to the plaintiff; and also proved by *Walter T. Hall* the acknowledgment of the defendant that he had received from the plaintiff the full amount of the consideration money mentioned in the said bill of sale; that when the plaintiff called upon the said witness to get the said letter to the defendant, he showed to

the witness the receipt which he had obtained from the defendant; and that the said receipt contained no clause or condition whatever, but was merely a receipt for so much money for the said negro *Isaac.* And by another witness proved, that on the said seventh day of July, the plaintiff, after he had so paid the money to the defendant, went to take possession of the said negro, who had, previously thereto, been hired, by the defendant, to a certain *Charles G. Hall,* but when he went into the harvest field, where the labourers of the said *C. G. Hall* were at work, he found that the said negro had absconded, about an hour before his arrival, and left his cradle in the harvest field; and that he never gained possession of said negro, who since then, has not been found. And further produced a certain *Thomas H Griffith,* who proved that the defendant did, on the eighth day of July, in the same year, declare and say, that as he had understood that the plaintiff intended *selling* said negro out of the state, he should not gain possession of him; and that the defendant did direct one of his female slaves to go and give information to the said negro *Isaac* of the intention of the plaintiff to dispose of him out of the state; but that he did not see the said female slave obey the said order, and did not know that the information was conveyed to the said negro *Isaac* by her, then, or at any other time; or whether the same was conveyed to the said *Isaac* either by the defendant or by his orders. The defendant then produced one *John* Murphey, junior, a son of the defendant, also a subscribing witness to the said bill of sale, who proved, that on the same day of the execution of the said bill of sale, and delivery aforesaid of said negro, shortly thereafter, the plaintiff complained to the defendant that the sum which he had received for the said negro was less than he was worth. Whereupon the defendant promised the plaintiff, that if he wanted the said negro for his own use, and would not sell him out of the state, if he would, at any time within four months from the execution of the said bill of sale, pay and satisfy him the amount of the consideration money, stated in the said bill of sale, he would relinquish to the plaintiff all the right of said negro so as aforesaid conveyed to him; and that on the said seventh day of July, at the time when the consideration money aforesaid was paid to the

plaintiff, he did declare and say to the defendant that he did exonerate him from the delivery of the said negro; that he knew where he was hired; that he would take him where he was, and as he was. That on the morning of the 8th of July 1818, the plaintiff called on the defendant, and stated to him that he had lost or mislaid the receipt for the money paid by him, on the day before, and requested another; to which the defendant assented, taking first the following acknowledgment: "I hereby acknowledge I have lost or mislaid the receipt *John Murphey* gave me yesterday, for four hundred and ten dollars and sixty-seven cents, which is void if found.

*Ellis Barron.*

July 8th, 1818."

And then gave the following his second receipt: "Received July 8th, 1818, of *Ellis Barron,* four hundred and ten dollars and sixty-seven cents; it will be in full for negro *Isaac,* in case he is not conveyed out of the state of *Maryland* before the eighth of July, in the year of our Lord one thousand eight hundred and nineteen.

*John* Murphey."

And also proved, by the said *John* Murphey, junior, that the following was brought some days afterwards to the defendant, by the plaintiff, and delivered by him: "Received, July 7th, 1818, of Mr. *Ellis Barron,* four hundred and ten dollars and sixty-seven cents, in full for all my right, claim and interest, of negro *Isaac,* which I purchased of him in April last, provided the said *Barron* does not sell, or cause to be sold, negro *Isaac,* out of the state of *Maryland,* for one year from this date.

*John Murphey.*

Test.—*John Murphey,* Junr."

And proved, by the said witness, that the aforegoing receipts were the original receipts which were given by the defendant to the plaintiff. And also proved by the same witness the execution and delivery, by the plaintiff to the defendant, of the following bond or instrument of writing: "Know all men by these presents, that I, *Ellis Barron,* of *Harford* county, and state of *Maryland,* am held and firmly bound by these presents, unto *John Murphey,* of the county and state aforesaid,

in the just and full sum of two hundred and fifty dollars, in case I the said *Ellis Barron* shall sell or cause to be sold negro *Isaac,* formerly the property of *John Forwood,* deceased, or exported out of the state of *Maryland* for one year, against his will, from this date.   As witness my hand and seal this eighth day of July, in the year of our Lord one thousand eight hundred and eighteen.

*E. Barron,* (Seal.)

Test.—*John Murphey,* Junr".

The defendant also proved by the same witness, that on the said eighth of July, after the plaintiff had made an unsuccessful effort to gain possession of the said negro *Isaac,* he went to the defendant's house, and announced to him that the said negro had run away.   To which the defendant replied he had taken away his cradle, and he supposed he should lose it; and that the plaintiff stated, that if he had taken away his cradle, the defendant should lose nothing by it, but that he would pay him for it.   And proved, by *Charles G. Hall,* that about a year afterwards the plaintiff called upon the said *Charles G. Hall,* and stated that as the negro was his, he must pay to him his harvest wages.   The defendant then prayed the following directions of the court to the jury.   1st. That if the jury believe that the plaintiff, on the payment of the money to the defendant in July, exonerated the defendant from the delivery of the negro slave aforesaid, and agreed to take him wherever he was, the plaintiff is not entitled to recover for the nondelivery of the said negro; and 2ndly. That if they should further believe that the defendant induced, enticed and persuaded the said negro to run away, still the plaintiff is not entitled to recover on the count for money had and received, nor on either of the special counts in the declaration.   The *first* prayer the Court, [*Hanson,* and *Ward,* A. J.] granted; and did then and there direct the jury accordingly; but the *second* prayer above mentioned the court refused to grant.   The defendant excepted; and the verdict and judgment being against him, he appealed to this Court.

The cause was argued at December term 1825, before BUCHANAN, Ch. J. and MARTIN, and STEPHEN, J.

*Mitchell*, for the Appellant, contended, 1. That the second direction prayed ought to have been given by the court below; and that the declaration ought to have contained a special count for enticing away the plaintiff's slave. 2. That the promise and undertaking laid in the *first* and *third* counts were void in law for want of consideration and mutuality, &c. 3. That material substantial averments were wanting in all the counts in the declaration; and the court below ought to have given judgment against the plaintiff below. He referred to *Cortelyou vs Lansing*, 2 *Caine's Cases*, 205. *Jones on Bailment*, 86, and *Appendix* xvi. *Bank of England vs Glover*, 2 *Ld. Raym.* 753. As to the misjoinder of causes of action, he cited 1 *Chitty's Plead.* 199. *Coryton vs Lythebe*, 2 *Saund.* 117, *(note.)*

On the bill of exceptions, he referred to *Bird vs Randall*, 1 *W. Blk.* 373. 1 *Bac. Ab.* tit. *Actions on the Case*, (F) 87. He contended that no one of the counts in the declaration was sustained by the proof; and that parol evidence was not admissible to explain a written contract.

*R. Johnson*, for the Appellee. As there was a general verdict, any defective count in the declaration is cured by the act of 1809, *ch.* 153. Here the *first* is a good count. This is not an action for a tort. It is upon a contract. Trover might have been brought, but the plaintiff may waive the tort, and go upon the promise and undertaking. He may recover upon the *second* count, there being a breach at the end of the declaration. If there is a defect at all, it is merely formal, which this court will not regard. 1 *Chitty's Plead.* 98, 99.

*Mitchell*, in reply, referred to *Raborg vs Kirwan*, 1 *Harr. & Johns.* 296.

*Curia adv. vult.*

Stephen, J. at this term, delivered the opinion of the Court. On the 10th of April 1818, the appellee sold to the appellant, a negro man named *Isaac*, for the consideration of $404 61, and gave him an absolute bill of sale of the said negro; but immediately after the execution of the bill of sale, *Barron*, the appellee, requested *Murphy*, the vendee and appellant, to state

to one of the witnesses to the bill of sale the understanding be-
tween them respecting the negro, *Isaac*, when the defendant,
*Murphey*, said the understanding between them was, that the
plaintiff, *Barron*, was to have the said negro again, provided he
paid the detendant, *Murphey*, the money mentioned in the bill
of sale within four months, if he wanted the said negro for his own
use. The plaintiff, to support his action, gave in evidence to the
jury, that on the seventh of July, next after the execution of the
said bill of sale, he called on the defendant and paid him the con-
sideration money mentioned in the said bill of sale, and that the
defendant did execute and deliver to him a receipt for the money
so paid, stating it to be in full for said negro *Isaac*, if not sold
out of the state within one year from that time. The plaintiff
also gave in evidence to the jury, that on the day he paid the
money to the defendant, he went to take possession of the said
negro, who had previously thereto been hired by the defendant
to a certain *Charles G. Hall*, but that when he went into the
harvest field, where the labourers of the said *Hall* were at
work, he found that the said negro had absconded about an
hour before his arrival, and that he never gained possession of
the said negro, who since then has not been found. The plain-
tiff further proved to the jury, that the defendant did, on the
eighth day of July, in the same year, declare that as he had un-
derstood the plaintiff intended selling the said negro out of the
state, he should not gain possession of him, and that the defen-
dant did direct one of his female slaves to go to and inform the
said *Isaac* that the plaintiff intended to sell him out of the
state; but did not prove that the information was communicat-
ed to the said *Isaac* by the said slave, as directed by the de-
fendant. The defendant, to support the issue on his part, prov-
ed to the jury, that on the seventh day of July, when the con-
sideration money was paid by the plaintiff to the defendant, he
did declare and say to the defendant, that he did exonerate him
from the delivery of the said negro, that he knew where he
was hired, and that he would take him where he was, and as
he was. Whereupon the defendant prayed the opinion of the
court, and their direction to the jury, that if they should be-
lieve that the defendant induced, enticed and persuaded, the
said negro to run away, still the plaintiff was not entitled to

recover on his count for money had and received, nor on ei-
ther of the special counts in the declaration; which opinion
and direction the court refused to give; to which refusal the de-
fendant excepted. And the question now to be decided by this
court is, whether the court below did right in refusing to in-
struct the jury as prayed; or in other words, whether, upon
the facts above stated, the action for money had and received
can be sustained? The action for money had and received is an
equitable action, and equally as remedial in its effects, as a bill
in equity. *Evans,* in his Essay on the action for money had
and received, 23, states the principle to be, that a suit in equity
must be considered as being merely equivalent to an action for
money had and received; and one of the grounds upon which
this action can be supported, is where money has been paid up-
on a consideration which has failed. It was contended, in the
course of the argument before this court, that upon the pay-
ment of the purchase money by the plaintiff to the defendant,
the property revested in the plaintiff, and that the action should
have been trover. In answer to that argument it may be re-
marked, that by the agreement of the parties, the defendant
was expressly absolved by the plaintiff from any obligation to
deliver the negro *Isaac* to him, he having expressly agreed to
take possession of him where he was hired. But it is not ne-
cessary to decide whether or not this is a case where the ac-
tion of trover might be supported; for if the action of *assump-*
*sit* for money had and received is sustainable, there is no error
in the opinion of the court below, and their judgment ought to
be affirmed. In *Moses vs Macferlan,* 2 *Burr.* 1012, Ld.
*Mansfield* says "the gist of this kind of action is, that the de-
fendant, upon the circumstances of the case, is *obliged by the*
*ties of natural justice and equity,* to *refund* the money."
*Evans,* in his Essays, 17, speaking of a failure of consideration
by the misconduct of the defendant, refers to the case of *Dutch*
*vs Warren,* which is particularly adverted to by Ld. *Mans-*
*field* in *Moses vs Macferlan.* That case was as follows: Up-
on the 18th of August 1720, on payment of £262 10, by the
plaintiff to the defendant, the defendant agreed to transfer him
five shares in the *Welch* copper mines, at the opening of the
books; and for security of his so doing gave him this note:

18th of August 1720. I do hereby acknowledge to have received of *Philip Dutch* £262 10, as a consideration for the purchase of five shares; which I do hereby promise to transfer to the said *Philip Dutch* as soon as the books are opened; being five shares in the *Welch* copper mines. Witness my hand. *Robert Warren.* The books were opened on the 22d of the same month, when *Dutch* requested *Warren* to transfer to him the said five shares, which he refused to do; and told the plaintiff he might take his remedy. Whereupon the plaintiff brought an action for money had and received, for the consideration money paid by him. An objection was taken at the trial, that the action would not lie; but that the action should have been brought for the nonperformance of the contract. But the objection was overruled by the court, who left it to the consideration of the jury, whether they would not make the price of the said stock as it was upon the 22d of August, when it should have been delivered, the measure of the damages; which they did; and gave the plaintiff but £175 damages. And a case being made for the opinion of the court of common pleas, the action was resolved to be well brought. The court said, that the extending those actions depends on the notion of fraud. If one man takes another's money to do a thing, and refuses to do it, it is a fraud; and it is at the *election* of the party injured either to affirm the agreement, by bringing an action for the nonperformance of it; or to disaffirm the agreement *ab initio,* by reason of the fraud, and bring an action for money had and received to his use. So in the case now before this court, if it had been the duty of the defendant to deliver the negro to the plaintiff, and he had refused to do so according to *contract,* the plaintiff would have had the right of electing either to have affirmed the agreement, by bringing an action for the nonperformance of it, or to have disaffirmed it *ab initio,* by reason of the fraud, and to have brought an action for money had and received to his use; but the evidence is full and explicit, that from the performance of that duty he was expressly discharged by the plaintiff himself. The other two counts being for the nondelivery of the slave, according to the contracts as therein stated, it follows, of course, that the judgment of the court below supporting the action, must be reversed. On payment of the pur-

chase money by *Barron* to *Murphey,* the property vested in *Barron,* and his proper remedy to redress the injury he had sustained, would have been a special action on the case against *Murphey* for enticing or persuading his slave to abscond from his service.

JUDGMENT REVERSED.