HANDEL M. HAYDEN  
vs.  } JULY TERM, 1849.  
DAVID STEWART, JR.

---

[JUDGMENT—LIEN OF.]

---

A JUDGMENT rendered in any one of the county courts in this state is not a lien upon lands lying in another county, until the plaintiff, in the mode pointed out by the acts of 1794, ch. 54, and 1795, ch. 24, has transferred his judgment to such other county.

Judgments, when liens at all, are general liens upon all the lands of the defendant, continuing for twelve years, and fasten as well upon those lands which the defendant held at the time of their rendition, as upon those subsequently acquired.

[The facts in this case are stated in the Chancellor's opinion.]

THE CHANCELLOR:

The question now to be decided, upon the petitions of the Farmers' Bank of Maryland, and the answers thereto, relates to the disposition of the sum of $1,538 13, paid into court under the order of the 25th of June last.

It appears, that on the 11th of September, 1848, the bank recovered judgments against Stewart, upon his acceptances, which it had discounted. The judgments were recovered in Baltimore, the place of Stewart's residence, and executions issued upon them to May term, 1849, of the County Court, were returned *nulla bona*, by the sheriff.

Prior to this, to wit, on the 18th of March, 1848, the decree in this case passed for the sale of certain real estate, situate in Anne Arundel county, which had been mortgaged by the defendant, Stewart, to the complainant, to secure the payment of a debt due him. A sale under this decree was made on the 22d of June following, which, by consent of parties, was ratified on the 2d of the then ensuing month of October. After satisfying the claim of the mortgagee, and the expenses of the suit, there remained a surplus of $2,521 73, which was, by the report of the Auditor, assigned to the mortgagor, and this report was on the 11th of the same month and year ratified, and the proceeds, in the usual form, directed to be applied by the trustee accordingly.

On the 16th of March, 1849, the bank filed a petition in the cause, in which, exhibiting its judgments and the proceedings upon them, and alleging that Stewart had no other property in the county of Baltimore or elsewhere, and insisting that their judgments were to be regarded as liens upon the surplus proceeds of sale assigned to Stewart, which was to be treated as real estate, they pray that the said surplus may be so applied, and in the meantime, and until the matter can be heard and decided, that Stewart may, by injunction, be restrained from transferring or assigning the same, and that the trustee may be required to pay the money into court.

An order passed upon this petition, for an injunction, as prayed against Stewart, and that the trustee or purchaser should pay the money assigned to Stewart into court, or show cause by a limited day.

On the 25th of June last, another petition was filed by the bank, in which, after explaining the reason for failing to serve copies of the former one, according to the order, it is stated that the purchaser is prepared to pay the second installment of the purchase money, but as his obligation given to the trustee for it had been sent to the petitioner for collection, the purchaser was in doubt whether he could with safety pay the money, without the express authority of the court in the premises.

This petition alleges, that the persons who pretend to hold this obligation as transferred to them knew, or might have known, of the rights of the petitioner ; and the petition denies that the transfer was made for a valuable consideration, and without notice, and insists that the object was to secure the use of said bond for the defendant, Stewart.

The bond of the purchaser, a copy of which was filed with this petition, is dated the 22d of June, 1848, made payable twelve months after date, for $1,450 40, with interest from date, and is indorsed by the trustee and B. M. Heighe, attorney, and the cashier of a bank in Baltimore, with whom it had been placed by Mr. Heighe for collection.

Mr. Heighe states in his answer, that this bond was assigned to him in April, 1847, under an order from Stewart to the trustee, to pay him, Heighe, $1,500, out of the proceeds of the sale. The assignment was, he swears, made in April, 1848, and the respondent swears, that he purchased the bond for a valuable consideration, and without notice, and that it was transferred to him by the trustee, soon after he received it from the purchaser, under the authority of the order of Stewart, for $1,500, the balance thereof being paid in cash ; and the respondent denies that when he received it, he knew of any fact or circumstance which could invalidate, in any way, his right to the money.

The judgments of the bank were recovered on the 11th of

39*

September, 1848, and as the trustee's report of the sale was not ratified until the 2d of October following, the mutation from real to personal estate was not complete at the former period, and, therefore, independently of the views presented by the counsel for the bank, it must be regarded as having had the character of real estate when the judgments were rendered. *Leadenham* vs. *Nicholson*, 1 *H. & G.*, 266.

But these judgments were not rendered in the county in which the land lay, and the very important question is presented as to the effect of a judgment under such circumstances. Whether a judgment rendered in one county is a lien on land lying in another, is a question of great practical importance, and it is to be regretted that no cause has yet arisen in which the Court of Appeals has been called upon to put it at rest.

In the case of Cape Sable Company, (3 *Bland*, 606,) the late Chancellor decided that the judgments and decrees of the County Courts, the Court of Chancery and the Court of Appeals, gave a lien upon the lands of the defendant every where in the state ; and if this is to be regarded as settling the law upon the subject, no farther examination of it need be made.

The doctrine of the Chancellor in the same case, with regard to the lien of a judgment on real estate, being but an incident of its liability to be taken in execution, and that there can be no lien where there is no direct or indirect mode of having an execution founded on such judgment, has been, as was conceded in the argument, overruled by the Court of Appeals, and can, of course, no longer be considered as the sound doctrine upon that subject.

The authority of the case, therefore, is weakened, and it appears to me, that so much mischief and inconvenience would result from following the decision upon the other point, that I am not prepared to give my assent to it. The difficulties already existing in the examination of titles are, I think, sufficiently perplexing, but it is manifest they would be aggravated to a most alarming extent, if the doctrine contended for is to prevail.

The 9th section of the act of 1794, chap. 54, authorizes the

county courts, upon the application of a plaintiff in a judgment upon the return of a *nulla bona*, on a *fieri facias*, issued in the county where the judgment was obtained, to issue executions on such judgments, against the goods, chattels, lands and tenements of the defendant, lying and being in other counties ; and upon an attested short copy of the judgment, the execution may be renewed from time to time, out of the County Court to which the original execution shall have been removed, as authorized by the act of 1795, chap. 24, in like manner as if the judgment in such case had been rendered therein.

When a judgment has been thus transferred, and become in effect a judgment of the county court to which the execution and short copy is sent, it seems to me it should, from that time, have all the incidents and qualities of a judgment rendered in the latter court, and of course be a lien on the lands of the defendant. But if the lien of a judgment of one of the county courts of the state is, as said by the late Chancellor, a lien upon the lands of the defendant everywhere within the state, then it would follow, that if land is sold in any one county, upon a judgment rendered in that county, a prior judgment existing in a different county against the same defendant, the purchaser would be disturbed in his title by such proceedings on the prior judgment as are authorized by the acts of assembly which have been referred to ; and, consequently, no one would be safe in buying land at sheriff's sale, without an examination of the records of every county court in the state ; for, as has been remarked, the privilege of being sued only in the county of one's residence is a privilege which may be, and is, sometimes waved.

It appears to me, that the decision to which the late Chancellor came, in the case of the Cape Sable Company, is in conflict with the policy of our laws upon such subjects. The registry acts all require that the deed, or instrument creating the incumbrance on real estate, shall be recorded in the county in which it is situate, for the very purpose of facilitating the investigation of titles, and for the security of purchasers ; and the policy which dictated this regulation would seem to apply with peculiar force to judgments, which if liens at all, are gen-

eral liens upon all the land of the defendants, continuing for twelve years, and fastening as well upon those lands which the defendant held at the time of the rendition of the judgment, as those subsequently acquired. *Murphy* vs. *McCord*, 12 *G. & J.*, 182 ; *Coombs* vs. *Jordan*, 3 *Bland*, 284; *Stow* vs. *Tift*, 15, *Johns. Rep.*, 458, 464.

In the case of the Cape Sable Company, the lien was considered as being dependent upon, and limited by, the right of the creditor to sue out execution upon his judgment, and consequently did not exist during the suspension of the right to execute, from lapse of time, or other cause ; and yet, judgments were pronounced to be liens from their date, upon all the lands of the defendant, wherever situated, though with respect to lands lying in a different county, and execution could not be taken out until a previous *fieri facias* had been issued, and returned *nulla bona* to the County Court in which the judgment was rendered. If, upon the reasoning of the Chancellor, the lien was only commensurate with the right to take out execution then, in the case of lands lying in a different county from that in which the judgment was rendered, the lien should have been postponed, until the preliminary proceedings necessary to give the right to send an execution out of the county had been taken ; and yet the Chancellor says, "all lands, wherever they may be, within any one of the counties of the state, are bound by the lien, which fastens upon them from the date of the judgment rendered in the County Court."

This doctrine of the Chancellor in the Cape Sable case has, it is admitted, so far as it asserts that the lien of a judgment is restricted by the right to take out execution upon it, been reversed by the Court of Appeals, and, therefore, it does not follow, that, because the immediate right to send a fieri facias out of the county in which the judgment was obtained does not exist, the lien is suspended, and the object in referring to the reasoning is simply to show that there is an apparent inconsistency in saying that the lien is limited by the right to execute, and yet the lien attaches before the right which gives it has come into being.

My opinion, therefore, is, upon this question, that a judgment rendered in any one of the county courts in this state, is not a lien upon lands lying in another, until the plaintiff, in the mode pointed out in the Acts of Assembly referred to, has transferred his judgment to such other county; and that, consequently, the bank in this case has no such lien upon the fund in question as can interfere with the right of the assignee, Heighe, to the proceeds of the bond now in court.

It is said, however, that the assignee has not stated, in his answer to the petition, how much he paid or advanced for the bond, and that it may be he gave a very inadequate sum for it. The answer, however, will be found to be strictly responsive to the allegation of the petition in this respect. The averment is, that the transfer was not made *bona fide*, and for a valuable consideration, without notice; in response to which, Heighe says, he purchased the bond bona fide, and for a valuable consideration, without notice of any fact or circumstance which could in any way invalidate his right to the money. The assignee was not called upon to disclose the amount which he paid as the consideration of the assignment, and, therefore, a general denial of the allegation that he was not a purchaser for value, and without notice, must be sufficient.

An order will therefore be passed, directing the proceeds of this particular note to be paid to the assignee, Heighe, and for the dismissal of the petitions as to him.

It does not follow, however, that the petitions of the bank are to be dismissed as against Stewart. There still remains a considerable sum due Stewart, and I am by no means prepared to say that the bank, as against him, has not shown its right to have such residue appropriated to pay its judgments. The money, assuming it not to have been paid over, is still under the control of the court, and the petitions make out a case, in which, if they do not establish a lien, they show the creditor to be remediless at law, which brings the case within the decision of the Court of Appeals in *Clagett, Adm'r of Beares* vs. *Worthington*, 3 *Gill*, 84.

The petitions will not, therefore, be dismissed as to Stewart, but will stand over, with liberty to amend, by bringing the insolvent trustee of Stewart before the court.

[No appeal was taken from this order.]